IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KING MICHAEL OLIVER, | ) | |
|---|---|---|
| *also known as* | ) | |
| MICHAEL OLIVER, #B89925, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00559-NJR |
| | ) | |
| SGT. MORELAND, | ) | |
| C/O WITT, | ) | |
| C/O HUBER, | ) | |
| C/O WELLS, | ) | |
| SGT. MELTON, | ) | |
| LT. J. SAMS, | ) | |
| C/O VICKERS, | ) | |
| SGT. MELCHERT, | ) | |
| LT. SEAGO, | ) | |
| C/O REINCKE, | ) | |
| SGT. BERGBOWER, | ) | |
| MAJOR MILES, | ) | |
| ELAIN R. DONAHUE, | ) | |
| WARDEN OF GRAHAM | ) | |
| CORRECTIONAL CENTER, | ) | |
| and INMATE MONTE RICHIE, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court for preliminary review of the First Amended Petition ("First Amended Complaint") filed by Plaintiff Michael Oliver. (Doc. 10, pp. 1-32). Plaintiff claims that Graham Correctional Center ("Graham") officials conspired with an inmate to murder him in retaliation for filing grievances in May 2019. He seeks monetary and equitable relief. (*Id*. at p. 12).

The First Amended Complaint is subject to screening under 28 U.S.C. § 1915A. Section 1915A requires the Court to screen prisoner complaints and filter out non-meritorious claims.

1

28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**First Amended Complaint**

In his First Amended Complaint, Plaintiff makes the following allegations: Plaintiff describes an elaborate conspiracy by Graham officials to murder him in retaliation for filing grievances. (Doc. 10, pp. 1-30). In May 2019, Plaintiff filed one or more grievances to complain about the conditions of his confinement. (*Id*.). He complained of a single chicken-less food tray, several cold showers, and a bar of soap that irritated his skin. (*Id*.) Graham officials and Inmate Richie responded to the grievances by plotting to poison Plaintiff and/or his cellmate. (*Id*.). Plaintiff either refused a poisoned food tray or ingested poisonous food and survived. (*Id*.). Either way, the plot was ineffective.[1] (*Id*.). Plaintiff survived and filed this action involving four claims against fifteen defendants, which he characterizes as:

**Count 1:** Deprivation of rights under color of state law and the institutional wide conspiracy to deprive inmates of their constitutional rights against cruel and unusual punishment (cold showers).

**Count 2:** Retaliation against Plaintiff for filing "the grievance."[2]

**Count 3:** Conspiracy to commit murder.

**Count 4:** Conditions-of-confinement claim.

---

[1] Plaintiff refers to numerous other claims that include the denial of access to writing instruments and paper at various IDOC facilities (Doc. 10, p. 12) and unconstitutional conditions of confinement at Jackson County Jail, Menard Correctional Center, and Vandalia Correctional Center (*Id*. at p. 10). Plaintiff admits that these claims exceed the scope of this lawsuit and states that he will file "'possibly' 3 more and maybe 4" suits to address them. (*Id*. at p. 4). He is still "collect[ing] evidence." (*Id*.).
[2] As discussed in more detail below, the Court cannot discern whether one *or more* grievances motivated the retaliation against Plaintiff. He refers to grievances filed as "Exhibit 1," "GR #0519-91-1," and "GR #0519-91-2" to the Complaint and "Exhibit 19" to the First Amended Complaint (Doc. 10, pp. 8, 14-16).

(*See* Doc. 10, pp. 1-31). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the First Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[3]

## Discussion

The First Amended Complaint is legally and factually frivolous. A claim is considered legally frivolous when it is "based on an indisputably meritless legal theory." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). Allegations are factually frivolous when they are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Felton*, 827 F.3d at 635 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). Plaintiff's allegations and claims are frivolous under both standards.

Civil conspiracy claims are cognizable under Section 1983. *Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002). A civil conspiracy generally consists of "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441-42 (7th Cir. 1988)). But a civil conspiracy claim provides no independent basis for liability under Section 1983. *Lewis*, 300 F.3d at 831.

In this case, Plaintiff also asserts claims for retaliation and unconstitutional conditions of confinement. A First Amendment retaliation claim arises where an inmate alleges "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). An Eighth Amendment claim for unconstitutional conditions of confinement arises where a prisoner is exposed to "extreme deprivations" that deny him the "minimal civilized measure of life's necessities" and are met with deliberate indifference by the defendants. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (citations omitted). The First Amended Complaint satisfies virtually none of the elements of these claims.

Plaintiff's claim of conspiracy rests entirely on bald assertions of a conspiracy and his suspicions of a plot to murder him and his cellmate. Under *Twombly*, the allegations must describe a "plausible account of a conspiracy." *Twombly*, 550 U.S. at 556. Hunches are not enough.

The retaliation claim is equally problematic. Although prisoners have a First Amendment right to file a grievance about the conditions of their confinement, *see Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010), Plaintiff does not clearly identify which grievance(s) prompted Graham officials to retaliate against him. He refers to Exhibit 1, Exhibit 19, GR#0519-91-1, and GR#0519-91-2. (Doc. 10, p. 8). Plaintiff also attaches this flowchart:

```
                    ─── EXHIBITS ───
  Readmitted                        Newly Admitted
                                 Replicas of      Responces of
                                                   ─ Exhibit 20B
  GR # 0519-91-1 ←                 Exhibit 20 ←   Exhibit 22
  GR # 0519-91-2 ←                       ↑
  Exhibit - 1 ←                    Exhibit - 21 = letter sent with
         - 2A                      ─ Exhibit -19
         - 2B
         - 2C                         Completly  New
         - 3
         - 4                       Exhibit - 23
         - 5                       Exhibit - 24
  R & C Manual
```

(Doc. 10, p. 2). The flowchart is confusing. Plaintiff draws an arrow from Exhibit 19 to Exhibit 1.[4] (*Id.*). He draws a series of arrows connecting Exhibits GR #0519-91-1, GR #0519-91-2,[5] Exhibit 20, Exhibit 20B, Exhibit 21, and Exhibit 22. Plaintiff provides copies of some grievances with the First Amended Complaint (*e.g.,* Exhibit 19 (*Id.* at pp. 14-16), Exhibit 20 (*Id.* at pp. 18-

---

[4] A side-by-side comparison of Exhibit 1 to the Complaint (Doc. 1, pp. 9-12) and Exhibit 19 to the First Amended Complaint (Doc. 10, pp. 14-16) reveals that their content is similar. In both, Plaintiff complains that he and his cellmate were denied chicken on a food tray delivered by Inmate Richie on May 15, 2019. Plaintiff pressed the emergency call button to complain, and four or five officers responded. When he demanded chicken, they all instructed him to "write the warden." Plaintiff's cellmate became angry and threw his food tray through the chuckhole door; he was punished with segregation. Plaintiff claims that the officers denied him chicken in retaliation for filing another grievance (Grievance #0519-19). (*Id.* at p. 10). He mentions a *cancelled* plan to poison his food tray. (*Id.*). And he complains about cold showers. (*Id.*).

[5] In GR# 0519-91-1 and GR# 0519-91-2 filed with the Complaint (Doc. 1, pp. 80-83), Plaintiff complains of cold showers in a grievance dated May 12, 2019.

19), Exhibit 20B (*Id*. at p. 20), Exhibit 21 (*Id*. at p. 21), Exhibit 22 (*Id*. at p. 22), Exhibit 23 (*Id*. at pp. 23-26), and Exhibit 24 (*Id*. at pp. 27-30)).[6] He filed other grievances with the Complaint.

Whether read alone or in combination, these grievances do not support a retaliation claim against the defendants. In them, Plaintiff complains of cold showers and the denial of chicken in May 2019, and he claims that these grievances prompted prison officials to attempt to murder him.

But Plaintiff does not identify which defendants hatched the plan to retaliate against him. He refers to "treacherous and wicked officers" who "all share similar characteristics of satanism." (Doc. 10, p. 4). He refers to "criminals, murderers, and law-breakers" employed in law enforcement. (*Id*. at p. 7). Plaintiff also refers to "ALL of the defendants" and states that they are "guilty to a certain extent." (*Id*. at p. 8). He claims that Inmate Richie was the person who delivered a poisonous food tray to him but states that "Sgt. Bergbower was always the one who turned the key" to his cell door. (*Id*. at p. 11). He mentions various defendants in his grievances, but Plaintiff's statement of claim does identify who was involved in his attempted murder.

Further, the only retaliatory act—an attempted poisoning—was admittedly never carried out or was ineffective. Plaintiff states that the defendants "want[ed] to literally strangle [him], they planned, plotted and strategized until they finally got [him] to eat poison they placed in [his] food for the sole purpose of MURDERING [HIM]." (*Id*. at p. 11). He goes on to state that Inmate Richie delivered a poisoned food tray to him, but Plaintiff either refused the tray or did not die after consuming the poison. (*Id*. at pp. 9, 11). It is not clear.

This is largely because Plaintiff contradicts himself and buries relevant allegations amidst fantastical allegations about a conspiracy of Biblical proportions. Citing Ephesians 6:12 and

---

[6] Exhibit 23 addresses Plaintiff's complaint about cold showers in a grievance dated May 27, 2019. (Doc. 10, pp. 23-26), and Exhibit 24 is a grievance complaining about Inmate Richie dated May 19, 2019. (*Id*. at pp. 27-30).

Matthew 23:1-39, Plaintiff describes a plot that "may root even deeper than we all can imagine" and is evidenced by the defendants' use of "hand signs to each other that represent satanic worship." (*Id*. at pp. 7, 10). He devotes an entire page ("Foreword") to a rant about "the WORST criminals, MURDERERS, and LAW-BREAKERS . . . employed within the law enforcement system." (*Id*. at p. 7). He goes on to complain about cold showers and a bar of soap that irritated his skin in May 2019. (*Id*. at pp. 1-31). *See Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (Eighth Amendment claims does not arise from an occasional discomfort). And Plaintiff regularly introduces issues that are not part of this action. (*See id*. at p. 12) ( "[I] still CANNOT obtain a real ink pen. But this is another count in another case!).

What is clear is that the allegations in the First Amended Complaint are irrational and even delusional. *Atkins v. City of Chicago*, 631 F.3d 823, 831-32 (7th Cir. 2011). The claims are based on indisputably meritless legal theories. *Neitzke*, 490 U.S. at 327-28. Accordingly, the First Amended Complaint and this action shall be dismissed as factually and legally frivolous.

## Disposition

**IT IS ORDERED** that the First Amended Complaint (Doc. 10) and this entire action are **DISMISSED** with prejudice as being frivolous. This includes **COUNTS 1, 2, 3,** and **4**, which are **DISMISSED** with prejudice. Plaintiff is **ADVISED** that this dismissal counts as a "strike" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See*

FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 9, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**